UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTINE E. MARFUT,**

    **Plaintiff,**

v.                                                          Case No. 8:08-CV-2006-T-27EAJ

**CITY OF NORTH PORT, FLORIDA,**
**et al.,**

    **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Before the court are Defendant City of North Port's **Motion to Dismiss** (Dkt. 10); a second **Motion to Dismiss** (Dkt. 14) filed by Defendants Nelson Hesse LLP, Robert Robinson, and Daniel Guarnieri; and Plaintiff's **Objection to and Rebuttal of Defendant's Motion to Dismiss** (Dkt. 19).[1] On October 7, 2008, Plaintiff filed a complaint alleging Defendants 1) violated her Fourth and Eighth Amendment rights (Dkt. 1 at ¶¶ 90-91), 2) discriminated against Plaintiff in violation of her civil rights (Id. at ¶ 92), 3) violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (Id. at ¶ 93), 4) committed mail fraud in violation of 18 U.S.C. § 1341 (Id. at ¶¶ 94-96), 5) violated the Hobbs Act, 18 U.S.C. § 1951 (Id. at ¶ 97), 6) committed honest services fraud in violation of 18 U.S.C. § 1346 (Id. at ¶¶ 98-101), and 7) violated the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968 (Id. at ¶¶ 102-104). Defendants contend that 1) this court lacks subject-matter jurisdiction over Plaintiff's claims (Dkt. 14 at 4-9), 2) Plaintiff's claims are barred by the doctrines of collateral estoppel and res judicata (Id. at 9-15), and 3) Plaintiff

---

[1] The district judge referred this matter for a report and recommendation (Dkt. 15). See 28 U.S.C. § 636(c); Local Rules 6.01(b) and (c), M.D. Fla.

has failed to state a legally valid claim under federal law (Dkt. 10 at 2; Dkt. 14 at 18-24). For the reasons set out below, the undersigned recommends that Defendants' motions to dismiss be granted because Plaintiff has failed to state a claim under federal law.

**Background**

In or around the year 2000, Plaintiff purchased two properties within the jurisdiction of the City of North Port, Florida ("the City"), one on Deming Avenue ("the Deming property") and one on Bumford Avenue ("the Bumford property") (Dkt. 1 at ¶ 1). On March 12, 2004, the City's Code Enforcement Board ("CEB") entered orders finding Plaintiff violated a local ordinance by failing to obtain permits to re-roof and enclose a lanai on the Deming property (Dkt. 14 Ex. 1 at Exs. A, C).[2] On October 28, 2004, the CEB held hearings, determined the property remained in violation, and assessed dual fines of $25 per day, beginning October 9, 2004, to "accrue daily until the property is brought into compliance" (Id.). In October 2006, Plaintiff received a collection letter from Daniel Guarnieri ("Guarnieri") of the Nelson Hesse Law Firm ("Nelson Hesse"), counsel for the City, attempting to collect the fine which by then had accumulated to $37,502.20 (Dkt. 1 at ¶¶ 2, 4, 35-36;

---

[2] Examination of evidence outside the pleadings, including exhibits attached thereto, typically requires summary judgment analysis under Rule 56, Fed. R. Civ. P. See Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002) ("Whenever a judge considers matters outside the pleadings in a 12(b)(6) motion, that motion is thereby converted into a Rule 56 Summary Judgment motion."). However, "[t]he Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment, because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Davis v. Williams Commc'ns, Inc., 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (citing Bryant v. Avado Brands Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999)); see Adamson v. Poorter, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (per curiam) (unpublished) (holding conversion from a motion to dismiss to a motion for summary judgment "will not occur if the court properly takes judicial notice of attached exhibits"). Accordingly, the court takes judicial notice of three CEB orders assessing administrative fines against Plaintiff (Dkt. 14 Ex. 1 at Exs. A, C; Dkt. 14 Ex. 2 at Ex. A).

2

Dkt. 1 Ex. H). Plaintiff asserts that in or around December 2006, the City placed a lis pendens against the Deming property and that in or around March 2007 she was served with notice that the City had instituted legal proceedings to foreclose on the Deming property (Dkt. 1 at ¶¶ 41, 43).

In addition to the fines concerning the Deming property, Plaintiff was also fined for her failure to obtain a permit relating to the Bumford property. According to Plaintiff, at some time in December 2006 a code enforcement officer instructed her to obtain a permit for a tent located in the back yard of the Bumford property (Id. at ¶ 64A). Plaintiff maintains she applied for a permit but was never called by the City regarding its approval, and that she ultimately "forgot about the permit" (Id. at 64C-64E). On January 25, 2007, the CEB entered an order finding Plaintiff violated a local ordinance by failing to obtain a permit, held a hearing, determined the property remained in violation, and assessed a fine of $50 per day, beginning December 29, 2006, to "accrue daily until the property is brought into compliance" (Dkt. 14 Ex. 2 at Ex. A). Plaintiff states that in or around June 2007 she learned that the City had instituted foreclosure proceedings against the Bumford property and that in July 2007 she received a second collection letter from Guarnieri, this time demanding payment of an accumulated $10,723.45 fine for her failure to obtain the tent permit (Dkt. 1 at ¶¶ 46, 64F; Dkt. 1 Ex. I).

Although Plaintiff's claims center on the City's assessment and enforcement of the fines, Plaintiff also alleges unlawful conduct by Nelson Hesse, Guarnieri, and Robert Robinson ("Robinson"). Plaintiff maintains that in or around the year 2001 Robinson became the City Attorney for the City and that in 2005 he became a partner with Nelson Hesse while retaining his position as City Attorney (Dkt. 1 at ¶¶ 5, 25). Plaintiff claims that Robinson "channeled approximately 1.3 million dollars from the City to his law firm, Nelson Hesse for legal fees for this

year, 2008" (Id. at ¶ 59). Plaintiff suggests she has been harmed by a conspiracy between Robinson and Nelson Hesse to generate legal fees for Nelson Hesse by instituting code enforcement proceedings against property owners such as Plaintiff (Id. at ¶¶ 60-63). Moreover, Plaintiff submits that Guarnieri "did make false statements in Court" to conceal an alleged conflict of interest in Robinson's position as City Attorney and his position as a partner with Nelson Hesse (Id. at ¶¶ 84-89).

## Analysis under Rule 12(b)(1), Fed. R. Civ. P.

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., a party may move for dismissal of a cause of action where the court lacks subject-matter jurisdiction.

**I. Ripeness**

Defendants submit that Plaintiff's complaint should be dismissed for lack of subject-matter jurisdiction because the claims are not yet ripe for review by this court (Dkt. 14 at 4-5). Defendants assert that this court should not address Plaintiff's claims until foreclosure proceedings have completed in the Florida state courts (Id. at 5).

Defendants are correct that "[r]ipeness is an issue of subject matter jurisdiction." Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1331 (11th Cir. 2006). Where a claimant challenges a governmental fine in federal court, ripeness turns on whether "'the governmental entity charged with implementing the regulations' [has] reached a 'final decision regarding the application of the regulations to the property at issue.'" Tari v. Collier County, 56 F.3d 1533, 1535 (11th Cir. 1995) (quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985)). A decision becomes final when the initial decisionmaker takes a definitive position that inflicts an actual, concrete injury. Id. A code enforcement board must be given the opportunity to make a final

4

decision as to whether a code violation has occurred before relief can be sought in federal court. City of Treasure Island v. Schwarz, No. 8:06-CV-2028-T-30TBM, 2007 WL 190862, at *1 (M.D. Fla. Jan. 23, 2007).

Defendants contend that Plaintiff will not suffer an actual, concrete injury until and unless the state court orders the foreclosure of Plaintiff's properties. Yet Defendants concede that the CEB has made a final decision as to whether Plaintiff violated the City's building codes. Indeed, Defendants argue that Plaintiff cannot dispute the amount and validity of the fines assessed by the CEB (Dkt. 14 at 6). Moreover, the imposition of the liens shows that the CEB has made a final decision to apply an ordinance to the properties." See Tari, 56 F.3d at 1536 (requiring a landowner to "wait until the County has made a final decision to apply a zoning ordinance to his property"); cf. Pine v. Bd. of County Comm'rs of Brevard County, No. 6:06-CV-1551-ORL-19JGG, 2007 WL 925622, at *2 (M.D. Fla. Mar. 23, 2007) ("A notice of violation sent by a county code enforcement division is not a final decision to apply a zoning ordinance to a resident's property if the resident is made aware that no enforcement action will be taken until a legal opinion is rendered."). Plaintiff's claims are therefore ripe for review by this court.

## II. Collateral Attack

Defendants next argue that, because Plaintiff failed to appeal any of the CEB orders to the Florida circuit court, she is prohibited from collaterally attacking the CEB orders in federal court (Dkt. 14 at 6). Defendants in essence ask the court to apply the Rooker-Feldman doctrine, which pertains to the subject-matter jurisdiction of the lower federal courts. Bates v. Harvey, 518 F.3d 1233, 1240 (11th Cir. 2008). This doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered

5

before the district court proceedings commenced." Lance v. Dennis, 546 U.S. 459, 460 (2006) (per curiam) (citation and internal quotations omitted).

Defendants overlook that "the Rooker-Feldman doctrine, unlike that of res judicata, applies only to state court decisions, not to state administrative decisions." Narey v. Dean, 32 F.3d 1521, 1525 (11th Cir. 1994). Where the decision of a state agency is not actually reviewed by a state court, the decision's effect is governed by res judicata rather than the Rooker-Feldman doctrine. Id. Because neither party suggests the CEB's orders were actually reviewed by a Florida state court, Rooker-Feldman does not relieve this court of subject-matter jurisdiction over Plaintiff's cause of action.

## Collateral Estoppel and Res Judicata

Defendants submit that even if this court has subject-matter jurisdiction over Plaintiff's cause of action, Plaintiff's claims are barred by the doctrines of collateral estoppel and res judicata (Dkt. 14 at 10-15).

"In [the Eleventh] Circuit, it is well established law that a federal court cannot give preclusive effect to a state court order, in subsequent litigation, without determining whether the state from which the order was rendered would give that order preclusive effect through the operation of the rendering state's law of res judicata and collateral estoppel." Urfirer v. Cornfeld, 408 F.3d 710, 717 (11th Cir. 2005) (citation and internal quotations omitted). Pursuant to Florida law, the doctrines of collateral estoppel and res judicata are applicable to administrative proceedings. M.C.G. v. Hillsborough County School Bd., 927 So. 2d 224, 227 (Fla. 2d DCA 2006) (collateral estoppel); Kirschner v. Baldwin, 988 So. 2d 1138, 1142 (Fla. 5th DCA 2008) (res judicata). Thus, the court must determine whether either doctrine applies to the CEB orders at issue here.

6

## I. Collateral Estoppel

"Under Florida law, collateral estoppel will preclude relitigation of an issue when (1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction." Wingard v. Emerald Venture Fla. LLC, 438 F.3d 1288, 1293 (11th Cir. 2006) (citation and internal quotations omitted). As applied to the CEB orders at issue in this case, the collateral estoppel doctrine precludes Plaintiff from relitigating issues such as whether Plaintiff failed to obtain permits as required by the City's regulations. Nevertheless, the CEB orders do not establish that Plaintiff was given an opportunity to fully litigate the issue of whether the fines were excessive as they currently stand. When the CEB orders were entered, Plaintiff was assessed prospective fines of $25 or $50 per day, to accrue daily until the properties were brought into compliance. Plaintiff's current Eighth Amendment challenge to accumulated fines of $37,502.20 and $10,723.45 could not have been litigated in its present context at the time of the hearings. Accordingly, Plaintiff is not collaterally estopped from litigating the issue of whether the fines are excessive in their current form. Moreover, because Plaintiff's remaining claims concern issues not litigated at the CEB hearings, Plaintiff is not collaterally estopped from bringing these claims.

## II. Res Judicata

Under Florida law, res judicata applies "when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004). Defendants contend that res judicata bars Plaintiff from attacking the "validity, amount, or legality of the fines" because Plaintiff had the opportunity to do

7

so during the CEB proceedings or on appeal (Dkt. 14 at 15). Again, Defendants overlook that at the time of those proceedings, no fine had yet been imposed. Plaintiff's assertion of an Eighth Amendment violation before the CEB actually imposed the fine would thus have been premature. Moreover, the fines actually imposed at the close of the hearings were $25 per day and $50 per day. Because the circumstances have drastically changed, with Plaintiff now subject to tens of thousands of dollars in fines, the identity of Plaintiff's Eighth Amendment cause of action is distinct from any such cause of action Plaintiff may have had during the CEB hearings. See M.C.G., 927 So. 2d at 227 ("Identity of causes of action means an identity of the facts essential to the maintenance of the action.") (citation and internal quotations omitted). Further, Plaintiff's remaining claims are not res judicata because they assert causes of action distinct from the City's code enforcement proceedings and in some instances concern acts that took place after the CEB issued its orders.

### Analysis Under Rule 12(b)(6), Fed. R. Civ. P.

Defendants submit that even if this court has subject-matter jurisdiction over Plaintiff's cause of action, and Plaintiff's claims are not otherwise barred, Plaintiff's complaint should be dismissed for failure to state a claim. When considering a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., a court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999) (citation omitted). To survive a motion to dismiss a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Dismissal of a complaint is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

**I. Count I: Violations of the Fourth and Eighth Amendments**

Plaintiff submits that Defendants violated her Fourth Amendment rights in three distinct manners.[3] Plaintiff alleges that Defendants 1) "invaded the privacy of [her] home to illegally snoop for alleged 'Code Violations'" (Dkt. 1 at ¶ 91A), 2) "violated her right to feel secure in her home by demanding answers to personal activity she has done within her own home and receipts therefore" (Id. at ¶ 91B), and 3) "made [her] feel insecure and fearful of mail and individuals coming to her home for fraudulent debt collection, letters concerning litigation and service for litigation" (Id. at ¶ 91C).

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Plaintiff's assertions that Defendants violated her Fourth Amendment rights by "demanding answers to personal activity" or making her "feel insecure and fearful of mail and individuals coming to her home" are not legitimate bases for a Fourth Amendment claim. Moreover, while invasion of her home could support such a claim, Plaintiff has not alleged any facts to establish that this claim is plausible on its face. Plaintiff's mere statement that Defendants illegally snooped for code violations is conclusory and does not render her Fourth Amendment claim plausible on its face. Therefore, Plaintiff's Fourth Amendment claim should be dismissed.

Plaintiff further submits that Defendants violated her Eighth Amendment rights "by attempted seizure of her house for excessive and illegal fines" (Dkt. 1 at ¶ 90). See U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."). For Eighth Amendment purposes, "[a] fine is excessive if it is

---

[3] Although Plaintiff does not assert a statutory basis for her Fourth Amendment claim, her Eighth Amendment claim, or her equal protection claim, the court presumes these claims are brought pursuant to 42 U.S.C. § 1983.

9

grossly disproportional to the gravity of a defendant's offense." United States v. 817 N.E. 29th Drive, Wilton Manors, Fla., 175 F.3d 1304, 1309 (11th Cir. 1999) (citation and internal quotation omitted). Nevertheless, deference should be given to statutorily authorized fines as the Excessive Fines Clause of the Eighth Amendment was intended as a limitation on the courts, not on legislatures. Id. at 1309 n.8.

Although the fines assessed against Plaintiff are substantial, they are not so grossly disproportionate as to be unconstitutional. The fines were initially $50 per day or less, and have merely accumulated due to Plaintiff's failure to remedy the violations at her properties. "[I]t would be contrary to reason and public policy to allow plaintiffs to evade responsibility simply by neglecting to (or deciding not to) pay fines for so long a period of time that the cumulative amount owed becomes large enough for such plaintiffs to argue unconstitutionally excessive punishment." Moustakis v. City of Fort Lauderdale, No. 08-60124-CIV, 2008 WL 2222101, at *2 (S.D. Fla. May 27, 2008) (dismissing Eighth Amendment claim where building code fine was initially assessed at $150 per day but had accumulated over a period of fourteen years to more than $700,000).

Further, while Plaintiff is correct that Fla. Stat. § 162.21(5)(b) limits certain penalties to $500, Plaintiff overlooks that § 162.09 of the Local Government Code Enforcement Boards Act, Fla. Stat. §§ 162.01-13, instructs that fines such as those assessed against Plaintiff "shall not exceed $250 per day for a first violation and shall not exceed $500 per day for a repeat violation." Moreover, there is no cap on the total fine that can be imposed unless the violation is irremediable. Massey v. Charlotte County, 842 So. 2d 142, 145 (Fla. 2d DCA 2003) (citing Fla. Stat. § 162.09(2)(a)). Because the fines at issue are authorized by Florida statutory law and are not grossly disproportional to remedy Plaintiff's code violations, Plaintiff has not stated a claim under the Eighth Amendment.

## II. Count II: Discrimination in Violation of Plaintiff's Civil Rights

In Count II of her Complaint, Plaintiff appears to claim that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. See U.S. Const. amend. XIV. Plaintiff alleges that Defendants unlawfully discriminated against her by "settling with other property owners but refusing any settlement with [her]" (Dkt. 1 at ¶ 92A). Plaintiff posits that Defendants engaged in "financial profiling" by refusing to settle with her because her property was unencumbered while settling with others whose properties were encumbered (Id. at ¶¶ 92B, 92C).

Where an equal protection claimant fails to allege membership in a suspect class or the violation of a fundamental right, the government need show only a rational basis for its actions. See Houston v. Williams, 547 F.3d 1357, 1363 (11th Cir. 2008). Plaintiff does not allege membership in a suspect class or the violation of a fundamental right. Thus, even if Defendants did refuse to settle with Plaintiff while settling with others, Defendants need only provide a rational basis for doing so. Plaintiff apparently concedes that Defendants refused to settle with her because she had the ability to pay her fines while others did not. Defendants' refusal to settle with Plaintiff due to her ability to pay the fines was clearly rational. Therefore, Plaintiff's equal protection claim will not stand as a matter of law.

## III. Count III: Violation of the Fair Debt Collection Practices Act

Plaintiff next argues that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") because the fines "were not by mutual agreement and exceed amounts allowed under [§ 182.51(5)(a) & (b), Fla. Stat.]" (Dkt. 1 at ¶ 93). Plaintiff contends that Defendants unlawfully mailed her two "fraudulent debt collection letter[s]" which she received in or around October 2006 and July 2007 (Id. at ¶¶ 34, 46; Dkt. 1 Ex. H; Dkt. 1 Ex. I). Plaintiff maintains that the October 2006

letter was fraudulent because 1) she was misled by a Code Enforcement Officer (Dkt. 1 at ¶ 36A), 2) she was not informed of the existence of a daily fine (Id. at ¶ 36B), 3) the fines should not have been allowed to accumulate for two years (Id. at ¶ 36C), 4) fines for failure to obtain a building permit are rectifiable (Id. at ¶¶ 36D, 36E), 5) the maximum penalty is limited to $500 under § 162.21(5)(a), Fla. Stat. (Id. at ¶ 36F), and 6) the amount of the fine is usurious (Id. at ¶ 36G). Plaintiff asserts that the July 2007 letter violated the FDCPA because it sought collection of a "usurious" fine that was "unlawful" and "not by agreement of the parties" (Id. at ¶ 69).

"The FDCPA imposes liability on 'debt collectors' who fail to comply with its provisions when collecting a 'debt.'" Buckman v. Am. Bankers Ins. Co. of Fla., 115 F.3d 892, 894-95 (11th Cir. 1997) (quoting 15 U.S.C. § 1692k). A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Fines are not considered debts within the meaning of the FDCPA because they are not the product of a consumer transaction. See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1371 (11th Cir. 1998) (finding "transactions" with the FDCPA are "consensual or contractual arrangements"); Durso v. Summer Brook Preserve Homeowners Ass'n, No. 6:07-CV-2007-ORL-19KRS, 2008 WL 2557558, at *6 (M.D. Fla. June 23, 2008) (concluding fine imposed by homeowners association did not create a debt under the FDCPA).

The fines assessed against Plaintiff did not arise from an FDCPA "transaction" and are not "debts" regulated by the statute. Even assuming Plaintiff's allegations are true, she has not stated

12

a valid FDCPA claim. Therefore, Plaintiff's FDCPA claim should be dismissed as a matter of law.[4]

## IV. Count IV: Mail Fraud Pursuant to 18 U.S.C. § 1341

In Count IV of her complaint, Plaintiff alleges that Defendants unlawfully "used the U.S. Mail to send fraudulent debt collection letters to [her] as a step in a scheme to defraud [her] of money and private real property by seeking payment for fraudulent debt[s]" (Dkt. 1 at ¶ 94). Plaintiff attempts to bring this claim pursuant to 18 U.S.C. § 1341, which criminalizes the fraudulent use of the mails (Id. at ¶ 95). Section 1341, however, is a criminal statute that does not provide a private right of action. Gellert v. Richardson, No. 95-256-CIV-ORL-19, 1995 WL 856715, at *2 (M.D. Fla. July 24, 1995) (citing Bell v. Health-Mor, Inc., 549 F.2d 342 (5th Cir. 1977)); see also Fisher v. Conseco Finance Co., No. 3:07cv266/RV/MD, 2007 WL 3012881, at *3 n.9 (N.D. Fla. Oct. 12, 2007) (listing courts that have found no private right of action under 18 U.S.C. § 1341). Therefore, Plaintiff's mail fraud claim should be denied as a matter of law.

## V. Count V: Violation of the Hobbs Act, 18 U.S.C. § 1951

In Count V of her complaint, Plaintiff alleges that Defendants' imposition of liens and "fraudulent" foreclosure litigation violated the Hobbs Act, 18 U.S.C. § 1951, because these acts interfered with her ability to sell her properties or collect rental income from them (Dkt. 1 at ¶ 97). Like the mail fraud statute, however, the Hobbs Act is a criminal statute that does not provide a private right of action. See Bradley v. Miller, 2007 WL 2900443, at *1 (S.D. Fla. Oct. 2, 2007); accord Barge v. Apple Computer, Inc., 164 F.3d 617, 1998 WL 650578, at *1 (2d Cir. Aug. 21, 1998) (unpublished). Plaintiff's claim under the Hobbs Act should be denied as a matter of law.

---

[4] The court recognizes that the collection letters each state that the FDCPA "is relative to the collection of this debt" (Dkt. 1 Ex. H; Dkt. 1 Ex. I). These statements are simply incorrect, and do not justify application of the FDCPA to fines which the statute is not meant to regulate.

## VI. Count VI: Honest Services Fraud Pursuant to 18 U.S.C. § 1346

Plaintiff next asserts that Robinson deprived Plaintiff of her right to Robinson's honest services, in violation of 18 U.S.C. § 1346, because he "personally profits" from code enforcement litigation and has an alleged conflict of interest due to his roles as both City Attorney and a partner with Nelson Hesse (Dkt. 1 at ¶¶ 98-101). Again, § 1346 merely defines a criminal violation and does not provide a private right of action. See Drance v. Simpson Thacher & Bartlett, No. 96 CIV. 5729(SAS), 1997 WL 442071, at *5 (S.D. N.Y. Aug. 5, 1997). Plaintiff's claim for honest services fraud should therefore be denied as a matter of law.

## VII. Count VII: Violations of the RICO Act, 18 U.S.C. §§ 1961-1968

Finally, Plaintiff alleges that Defendants violated the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961-1968 (Dkt. 1 at ¶¶ 102-104). Plaintiff asserts that Defendants "use the threat of expensive litigation ($20,000 on average for a homeowner to defend) or the threatened loss of real property to coerce large settlements from property owners" (Id. at ¶ 102B). Plaintiff further contends that Robinson used his position as county attorney to generate such litigation and direct it to Nelson Hesse, where he is a partner, ultimately resulting in increased profits for Robinson (Id. at ¶¶ 102G-J).

To state a claim under the civil RICO statutes, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Langford v. Rite Aid of Ala., Inc., 231 F.3d 1308, 1311 (11th Cir. 2000). A "pattern of racketeering activity" consists of "at least two acts of racketeering activity ... the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (2006). Consequently, a well-pleaded civil RICO claim "must allege facts sufficient to support each of the statutory elements for at least two

of the pleaded predicate acts." Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 949 (11th Cir. 1997). A predicate act could be, inter alia, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical," or any act indictable under certain enumerated statutes. 18 U.S.C. § 1961(1) (2006).

Plaintiff submits that Defendants have engaged in "litigation for profit" by initiating code enforcement proceedings against her, and that the initiation of these suits was "racketeering activity" supporting her civil RICO claim (Dkt. 19 at 13-14). Because Plaintiff's complaint does not expressly identify which statutorily prescribed violations she relies upon for this assertion, the court presumes that Plaintiff's RICO claim rests on her allegations of mail fraud and Hobbs Act extortion.[5] Thus, for Plaintiff's claim to survive as a matter of law, she must allege facts sufficient to establish the statutory elements of at least two such acts.

**a. Mail Fraud**

"The mail fraud statute, 18 U.S.C. § 1341, criminalizes the use of the mails in furtherance of a scheme to defraud or to obtain money or property by means of false or fraudulent representations." United States v. Cooper, 132 F.3d 1400, 1404-05 (11th Cir. 1998). Where mail fraud is asserted as a predicate act for a civil RICO claim, a plaintiff "must show not only that the mail fraud statute has been violated, but that she suffered injury as a result of the violation." Byrne v. Nezhat, 261 F.3d 1075, 1110 (11th Cir. 2001).

Further, a civil RICO claim predicated on fraud must be pled with the increased level of

---

[5] Although Plaintiff also alleges honest services fraud in violation of 18 U.S.C. §1346, such violations are not among the predicate acts enumerated in 18 U.S.C. § 1961(1), which defines "racketeering activity" for purposes of a civil RICO claim.

15

specificity required by Rule 9(b), Fed. R. Civ. P.[6] Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007). Thus, such a claim "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the [d]efendants gained by the alleged fraud." Id. at 1316-17. Finally, where multiple defendants are named, the complaint must also "plead fraud with the requisite specificity as to each of the [defendants]." Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1381 (11th Cir. 1997) (per curiam).

Plaintiff has sufficiently identified the documents at issue, which consist of letters sent to Plaintiff in October 2006 (Dkt. 1 at ¶ 34; Dkt. 1 Ex. H) and July 2007 (Dkt. 1 at ¶ 46; Dkt. 1 Ex. I). Defendants argue that Plaintiff's mail fraud claims should nonetheless be dismissed because Plaintiff failed to allege that she relied upon the contents of the letter (Dkt. 14 at 27-29). Defendants overlook that a plaintiff is not required to allege first-person reliance when asserting a civil RICO claim predicated on mail fraud. Bridge v. Phoenix Bond & Indem. Co., 128 S. Ct. 2131, 2139 (2008). Nevertheless, Plaintiff has not suggested that anyone else relied on the contents of the letters, which may well be required to establish the element of causation where first-person reliance is not alleged. Id. at 2144; see also Ironworkers Local Union No. 68 v. AstraZeneca Pharm. LP, ___ F. Supp. 2d ___, 2008 WL 4832659, at *3 (M.D. Fla. Nov. 4, 2008) (recognizing that, even in light of Bridge, failure to allege reliance by anyone could prevent establishment of the proximate cause necessary for civil RICO claim predicated on mail fraud).

---

[6] Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed. R. Civ. P.

Regardless, Plaintiff has not alleged that the letters actually contained misrepresentations. Defendants' attempts to collect the fines by mailing letters to Plaintiff did not constitute fraudulent use of the mail simply because Plaintiff disputes the validity of the fines. Further, Plaintiff has not suggested that the mailings caused her any harm other than having "to settle or spend a large fortune to litigate" (Dkt. 1 at ¶ 103). Plaintiff overlooks that this supposed injury did not derive from any misrepresentations in the letters, but instead sprang from the CEB orders assessing the fines. Finally, Plaintiff has not pled her mail fraud claim with the requisite specificity as to each of the Defendants, but simply lumps them together in her allegations. Altogether, Plaintiff's allegations of mail fraud are not well-pleaded and do not support her civil RICO claim.

**b. Hobbs Act Extortion**

"The Hobbs Act . . . criminalizes interference with interstate commerce by extortion, along with attempts or conspiracies, [18 U.S.C.] § 1951(a), extortion being defined as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right,' § 1951(b)(2)." Wilkie v. Robbins, 127 S. Ct. 2588, 2605 (2007). The Hobbs Act does not expose governmental employees to extortion charges for simply attempting to enforce the government's property claims. Id. at 2607. Further, neither actual nor threatened litigation is considered "wrongful" for purposes of the Hobbs Act. Raney v. Allstate Ins. Co., 370 F.3d 1086, 1087-88 (11th Cir. 2004) (per curiam).

Plaintiff's allegations make clear that Defendants are attempting to collect the fines on behalf of the City, a governmental entity. Moreover, Plaintiff concedes that Defendants are attempting to collect on the fines by instituting foreclosure proceedings in the Florida state court system (Dkt. 1 at ¶¶ 23-24, 43-44). Although Nelson Hesse may receive legal fees for its work on behalf of the

17

City, the receipt of such fees does not amount to "extortion" that might sustain Plaintiff's Hobbs Act claims. Consequently, even when taken as true, Plaintiff's Hobbs Act allegations are not well-pleaded and will not support her civil RICO claim.

**Conclusion**

Because Plaintiff's claims are ripe for review and are not collateral attacks upon a state court judgment, this court has subject-matter jurisdiction over each of the claims in Plaintiff's complaint. Further, Plaintiff's claims are not barred by the doctrines of collateral estoppel or res judicata. Nonetheless, Plaintiff has failed to state a valid claim under federal law and dismissal of her complaint is called for pursuant to Rule 12(b)(6), Fed. R. Civ. P.[7]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Plaintiff's complaint be dismissed for failure to state a claim; and

(2) Plaintiff be given a final opportunity to amend her complaint to state a claim that is plausible as required by Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).

**Date: January 21st, 2009**

ELIZABETH A JENKINS
United States Magistrate Judge

---

[7] Defendants also assert that certain Defendants 1) enjoy absolute immunity from § 1983 claims, and 2) are not vicariously liable for the acts of their employees (Dkt. 14 at 15-18). Because Plaintiff has failed to state a valid claim, the court need not delve into the applicability of these defenses, which could well turn on the nature of the allegations in a valid claim.

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge